**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF KENTUCKY
COVINGTON DIVISION**
*Electronically Filed*

| | |
|---|---|
| IN RE: BRINTON HAUBNER <br><br> Debtor. | ) <br> ) CHAPTER 7 <br> ) CASE NO. 13-20681-TNW <br> ) <br> ) |
| DISH NETWORK L.L.C., ECHOSTAR TECHNOLOGIES L.L.C., and NAGRASTAR LLC, <br><br> Plaintiffs, <br><br> v. <br><br> BRINTON HAUBNER, <br><br> Defendant. | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) ADVERSARY NO. _____ <br> ) <br> ) <br> ) |

**DISH NETWORK L.L.C., ECHOSTAR TECHNOLOGIES L.L.C., AND NAGRASTAR LLC'S COMPLAINT FOR DETERMINATION OF DISCHARGEABILITY OF DEBT ARISING FROM SATELLITE PIRACY/SIGNAL THEFT**

Plaintiffs, DISH NETWORK L.L.C., ECHOSTAR TECHNOLOGIES L.L.C., AND NAGRASTAR LLC (collectively "DISH Network" or "Plaintiffs"), for their complaint against Defendant Brinton Haubner ("Haubner" or "Defendant"), allege as follows:

**I.    PARTIES**

1.    Defendant is the "debtor" in this Chapter 7 case. Brinton Haubner is a natural person who resides at 3904 Lori Drive, Apt. 15, Erlanger, Kentucky 41018.

2.    DISH Network L.L.C. is a Colorado limited liability company with its principal place of business located at 9601 South Meridian Blvd., Englewood, Colorado 80112.

1

3. EchoStar Technologies L.L.C. is a Texas limited liability company with its principal place of business located at 90 Inverness Circle East, Englewood, Colorado 80112.

4. NagraStar LLC is a Colorado limited liability company with its principal place of business located at 90 Inverness Circle East, Englewood, Colorado 80112.

## II.    JURISDICTION/VENUE

5. This is a non-dischargeability action under 11 U.S.C. §§ 523(a)(4) and 523(a)(6), and constitutes an adversary proceeding pursuant to Federal Rule of Bankruptcy Procedure 7001(6).

6. The Court has jurisdiction over this adversary proceeding under 28 U.S.C. §§ 157(b)(2)(I) and 1334. This is a core proceeding in accordance with Federal Rule of Bankruptcy Procedure 7008.

7. Plaintiffs allege violations by Defendant of the Digital Millennium Copyright Act, 17 U.S.C. § 1201 *et seq.*, the Communications Act of 1934, as amended, 47 U.S.C. § 605 *et seq.*, and the Electronic Communications Privacy Act, 18 U.S.C. § 2511 *et seq*.

8. Venue is proper in this judicial district under 28 U.S.C. § 1409.

## III.    PRELIMINARY STATEMENT

9. DISH Network filed suit against Haubner in the United States District Court for the Eastern District of Kentucky, Cause No. 2:13-cv-00012-DLB-CJS on January 23, 2013, (the "Civil Action"), alleging violations by Haubner in (I) circumventing the DISH Network security system by obtaining DISH Network's control words from a IKS computer server and using the control words to view DISH Network's satellite transmissions of television programming in violation of the Digital Millennium Copyright Act (the "DMCA"), 17 U.S.C. § 1201 (a)(1); (II) engaging in the unauthorized reception of DISH Network's satellite transmissions of television

programming by receiving descrambling control words from the pirate IKS server in violation of the Communications Act, 47 U.S.C. § 605(a); and (III) intercepting DISH Network's satellite transmissions of television programming upon receiving descrambling control words from the pirate IKS server in violation of 18 U.S.C. § 2511(1)(a) and § 2520.  (*See* Civil Action Dkt. 1.)

10. Haubner filed this Chapter 7 bankruptcy case on April 17, 2013. (Dkt. 1.)

11. On April 18, 2013, the Court issued its Notice of Chapter 7 Bankruptcy Case, Meeting of Creditors, & Deadlines. (Dkt. 3.) The Notice of Chapter 7 Bankruptcy Case, Meeting of Creditors, & Deadlines set the deadline to object to the debtor's discharge or to challenge dischargeability of certain debts as July 15, 2013.

### IV. NATURE OF THE ACTION

12. Haubner unlawfully circumvented the DISH Network security system and received copyrighted, subscription-based DISH Network satellite television programming without authorization and without payment to DISH Network. Haubner accomplished this in part by subscribing to a pirate television service known as Nfusion Private Server or NFPS. Haubner purchased the Nfusion Private Server subscriptions from Thomas Dixon, a/k/a Wufman and hybrid62@hotmail.com ("Dixon"). Dixon's business records show that Haubner subscribed to the Nfusion Private Server pirate television service, allowing Haubner to illegally decrypt DISH Network's satellite signal and view copyrighted satellite television programming without authorization from DISH Network. Haubner's acts violate the Digital Millennium Copyright Act, Communications Act of 1934, and Electronic Communications Privacy Act.

### A.  DISH Network Satellite Television Programming

13. DISH Network L.L.C. is a multi-channel video provider that delivers video, audio, and data services to approximately 14 million customers throughout the United States, Puerto Rico, and the U.S. Virgin Islands via a direct broadcast satellite system.

14. DISH Network uses high-powered satellites to broadcast, among other things, movies, sports and general entertainment services to consumers who have been authorized to receive such services after payment of a subscription fee, or in the case of a pay-per-view movie or event, the purchase price.

15. DISH Network contracts for and purchases the distribution rights for most of the programming broadcast on the DISH Network platform from providers such as network affiliates, pay and specialty broadcasters, cable networks, motion picture distributors, sports leagues, and other holders of programming rights.

16. The works broadcast on the DISH Network platform are copyrighted. DISH Network has the authority of the copyright holders to protect these works from unauthorized reception and viewing.

17. DISH Network programming is digitized, compressed, and scrambled prior to being transmitted to multiple satellites located in geo-synchronous orbit above Earth. The satellites, which have relatively fixed footprints covering the United States and parts of Canada, Mexico, and the Caribbean, relay the encrypted signal back to Earth where it can be received by DISH Network subscribers that have the necessary equipment.

18. A DISH Network satellite television system consists of a compatible dish antenna, receiver, smart card which in some instances is internalized in the receiver, television, and cabling to connect the components. EchoStar Technologies L.L.C. provides receivers, dish

antenna, and other digital equipment for the DISH Network system. Smart cards and other proprietary security technologies that form a conditional access system are supplied by NagraStar LLC.

19. Each EchoStar Technologies receiver and NagraStar smart card is assigned a unique serial number that is used by DISH Network when activating the equipment and to ensure the equipment only decrypts programming that the customer is authorized to receive as part of his subscription package and pay-per-view purchases.

20. The NagraStar conditional access system performs two interrelated functions in the ordinary course of its operation: first, subscriber rights management, which allows DISH Network to "turn on" and "turn off" programming a customer has ordered, cancelled, or changed; and second, protection of NagraStar's control words that are contained within and meant to descramble DISH Network's satellite signal, which prevents unauthorized reception and viewing of DISH Network programming.

21. An integral part of NagraStar's conditional access system is a smart card having a secure embedded microprocessor which functions as a security computer. The EchoStar Technologies receiver processes an incoming DISH Network satellite signal by locating an encrypted part of the transmission known as NagraStar's entitlement control message and forwards it to the smart card. Provided that the subscriber is tuned to a channel he is authorized to watch, the smart card uses its decryption keys to unlock the message, uncovering a NagraStar control word. The NagraStar control word is transmitted back to the receiver in order to decrypt the DISH Network satellite signal.

22.     Together, the EchoStar Technologies receiver and NagraStar smart card convert DISH Network's encrypted satellite signal into viewable programming that can be displayed on the attached television of an authorized DISH Network subscriber.

### B.     Piracy of DISH Network Programming

23.     Various devices and services have appeared on the black market over the years for the purpose of illegally decrypting or "pirating" DISH Network programming. The black market in piracy devices and services represents a multimillion-dollar industry in the United States.

24.     One form of satellite piracy is known as "control word sharing," "Internet key sharing," or more simply "IKS." With IKS, once piracy software is loaded onto an unauthorized receiver, the end-user connects the receiver to the internet via a built-in Ethernet port or via an add-on dongle. The Internet connection serves two piracy-related purposes: first, it automatically updates piracy software on the receiver; and second, the Internet connection contacts a pirate computer server, which in turn provides the necessary NagraStar control words.

25.     The pirate computer server, called an "IKS server," is typically assembled by combining several EchoStar satellite receivers with embedded NagraStar smart cards and connecting those receivers to a computer server. The person operating the server will typically activate a single paid DISH Network subscription for each of the EchoStar satellite receivers and, utilizing pirate software and technology, will monitor the receivers and extract the secret descrambling codes or "control words" from these paid accounts. The pirate computer server will then send these codes out over the internet to end-users whose computers and receivers are programmed to receive the descrambling control words and will utilize those control words to

6

descramble DISH Network programming without a separate, authorized subscription or payment of a subscription fee to DISH Network.

26. Nfusion Private Server or NFPS is an IKS television service that provides end-users computer software and decryption codes needed to descramble DISH Network television programming without authority and without payment of a subscription fee to DISH Network.

**C.    Defendant's Wrongful Conduct**

27. Thomas Dixon, a/k/a Wufman and hybrid62@hotmail.com, sold subscriptions to the Nfusion Private Server pirate television service. Dixon provided Plaintiffs with copies of his business records.

28. Dixon's business records show that Haubner purchased subscriptions to the Nfusion Private Server television service on or about January 11 and December 30, 2011.

29. Haubner utilized the Nfusion Private Server television service and IKS server to obtain NagraStar's descrambling control words to illegally receive and descramble DISH Network copyrighted television programming.

30. To access the IKS server, Haubner used a pirate satellite receiver loaded with piracy software, which is a software device designed to circumvent the technological measures used to protect access to copyright television programming. Each time Haubner tuned his pirate satellite receiver to a scrambled DISH Network television channel, the pirate satellite receiver would access the Nfusion Private Server pirate television service and IKS server to request the descrambling control word for that particular channel, the IKS server would return the control word, and Haubner would descramble the encrypted signal and view the television programming without authorization.

31. Haubner's intentional interception of DISH Network's satellite transmissions of television programming and NagraStar's descrambling control words causes actual and imminent irreparable harm to Plaintiffs for which there is no adequate remedy at law.  Through IKS piracy, Haubner has unlimited access to DISH Network programming, including premium and pay-per-view channels, resulting in an unlimited and unknown amount of revenues being diverted from Plaintiffs.  In addition to lost revenue, Haubner's actions cause harm to Plaintiffs in the form of increased anti-piracy costs as well as loss of reputation and goodwill.

V. **HAUBNER'S DEBT TO PLAINTIFFS IS NON-DISCHARGEABLE**

32. Haubner's debt to Plaintiffs is non-dischargeable under 11 U.S.C. §§ 523(a)(4) and/or 523(a)(6).

33. Plaintiffs herein allege claims against Haubner for causes of action under the DMCA, 17 U.S.C. § 1201(a)(1), the Communications Act, 47 U.S.C. § 605(a), and the Electronic Communications Privacy Act, 18 U.S.C. § 2511 and § 2520.  Debts stemming from these causes of action have been found to be of the type described as non-dischargeable under 11 U.S.C. §§ 523(a)(4) and 523(a)(6).  *See, e.g., In re Figler*, 407 B.R. 181, 193 (Bankr. W.D. Pa. 2009); *In re Karpinsky*, 328 B.R. 516, 527-29 (Bankr. E.D. Mich. 2005); *DirecTV v. Budson*, WL 1364571 (D. Idaho 2005); *In re Deerey*, 317 B.R. 525, 533-35 (Bankr. M.D. Fla. 2007).

A. **Count I - Haubner's debt is non-dischargeable under 11 U.S.C. 523(a)(4)**

34. Plaintiffs repeat and reallege the allegations in the proceeding paragraphs as if set forth fully herein.

35. Haubner is indebted to Plaintiffs for monetary damages stemming from Plaintiffs' claims against Haubner for (I) circumventing the DISH Network security system by obtaining DISH Network's control words from a IKS computer server and using the control words to view

DISH Network's satellite transmissions of television programming in violation of the DMCA, 17 U.S.C. § 1201 (a)(1); (II) engaging in the unauthorized reception of DISH Network's satellite transmissions of television programming by receiving descrambling control words from the pirate IKS server in violation of the Communications Act, 47 U.S.C. § 605(a); and (III) intentionally intercepting DISH Network's satellite transmissions of television programming upon receiving descrambling control words from the pirate IKS server in violation of 18 U.S.C. § 2511(1)(a) and § 2520.

36. Haubner violated 17 U.S.C. § 1201(a)(1) and 47 U.S.C. § 605(a) willfully and for purposes of commercial advantage or private financial gain.

37. Haubner violated 18 U.S.C. § 2511(1)(a) and § 2520 for tortious and illegal purposes, or for commercial advantage or private financial gain.

38. Haubner knew or should have known his actions were illegal and prohibited. Such violations have and will continue to cause damage to DISH Network. Unless restrained and enjoined by the Court, Haubner will continue to violate 17 U.S.C. § 1201(a)(1); 47 U.S.C. § 605(a); and 18 U.S.C. § 2511(1)(a) and § 2520.

39. The debt arising from Haubner's conduct is excepted from discharge pursuant to 11 U.S.C. 523(a)(4).

### B. Count II - Haubner's debt is non-dischargeable under 11 U.S.C. 523(a)(6)

40. Plaintiffs repeat and reallege the allegations in the proceeding paragraphs as if set forth fully herein.

41. Haubner is indebted to Plaintiffs for monetary damages stemming from Plaintiffs' claims against Haubner for (I) circumventing the DISH Network security system by obtaining DISH Network's control words from a IKS computer server and using the control words to view

DISH Network's satellite transmissions of television programming in violation of the DMCA, 17 U.S.C. § 1201 (a)(1); (II) engaging in the unauthorized reception of DISH Network's satellite transmissions of television programming by receiving descrambling control words from the pirate IKS server in violation of the Communications Act, 47 U.S.C. § 605(a); and (III) intentionally intercepting DISH Network's satellite transmissions of television programming upon receiving descrambling control words from the pirate IKS server in violation of 18 U.S.C. § 2511(1)(a) and § 2520.

42. Haubner violated 17 U.S.C. § 1201(a)(1) and 47 U.S.C. § 605(a) willfully and for purposes of commercial advantage or private financial gain.

43. Haubner violated 18 U.S.C. § 2511(1)(a) and § 2520 for tortious and illegal purposes, or for commercial advantage or private financial gain.

44. Haubner knew or should have known his actions were illegal and prohibited. Such violations have and will continue to cause damage to DISH Network. Unless restrained and enjoined by the Court, Haubner will continue to violate 17 U.S.C. § 1201(a)(1); 47 U.S.C. § 605(a); and 18 U.S.C. § 2511(1)(a) and § 2520.

45. The debt arising from Defendant's conduct is excepted from discharge pursuant to 11 U.S.C. 523(a)(6).

## PRAYER FOR RELIEF

Plaintiffs request that the Court enter an order finding that the debt owed by Haubner to DISH Network is nondischargeable under 11 U.S.C. §§ 523(a)(4) and 523(a)(6) and seek judgment as follows:

A. For a grant of permanent injunctive relief restraining and enjoining Haubner, and his employees, agents, representatives, attorneys, and all persons acting or claiming to act on his

behalf or under his direction or authority, and all persons acting in concert or in participation with him, from circumventing the DISH Network security system or receiving without authorization DISH Network's satellite transmissions of television programming;

  B. For an order impounding all unauthorized receivers, dongles, software, and other devices, components, or parts thereof in the custody or control of Haubner that the Court has reasonable cause to believe were involved in a violation of the Digital Millennium Copyright Act, 17 U.S.C. § 1201 or the Communications Act, 47 U.S.C. § 605;

  C. Award Plaintiffs the greater of their actual damages together with any profits made by Haubner that are attributable to the violations alleged herein, or statutory damages in the amount of up to $2,500 for each violation of 17 U.S.C. § 1201(a)(1), pursuant to 17 U.S.C. §§ 1203(c)(2) and 1203(c)(3)(A);

  D. Award Plaintiffs the greater of their actual damages together with any profits made by Haubner that are attributable to the violations alleged herein, or statutory damages in the amount of up to $10,000 for each violation of 47 U.S.C. § 605(a), pursuant to 47 U.S.C. § 605(e)(3)(C)(i).  Plaintiffs seek to increase that amount up to $100,000 for each violation, at the Court's discretion, in accordance with 47 U.S.C. § 605(e)(3)(C)(ii);

  E. Award Plaintiffs the greater of their actual damages together with any profits made by Haubner that are attributable to the violations alleged herein, or statutory damages in the amount of $100 per day for each violation of 18 U.S.C. §§ 2511(1)(a) or $10,000, pursuant to 18 U.S.C. § 2520(c)(2);

  F. Award Plaintiffs punitive damages pursuant to 18 U.S.C. § 2520(b)(2);

G. For an award of Plaintiffs' costs, reasonable attorneys' fees, and investigative expenses pursuant to 17 U.S.C. § 1203(b)(4)-(5), 47 U.S.C. § 605(e)(3)(B)(iii), and 18 U.S.C. § 2520(b)(3);

H. For pre- and post-judgment interest on all damages, from the earliest date permitted by law at the maximum rate permitted by law; and

I. For such additional relief as the Court deems just and equitable.

DATED: May 10, 2013                    Respectfully submitted,

*/s/ John M. Spires, Esq.*
John M. Spires, Esq.
Dinsmore & Shohl LLP
250 West Main Street, Suite 1400
Lexington, Kentucky 40507
(859) 425-1036 | Phone
(859) 425-1099 | Fax
john.spires@dinsmore.com

**Counsel for Plaintiffs**

Additional Counsel:
Christopher P. Craven (*pro hac vice* to be filed)
christohper.craven@hnbllc.com
Hagan Noll & Boyle LLC
Two Memorial City Plaza
820 Gessner, Suite 940
Houston, Texas 77024
(713) 343-0478 | Phone
(713) 758-0146 | Fax

518555v2